UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:  09-30097

| | |
|---|---|
| RICHARD SALOIS, | ) |
|           Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| U.S. TSUBAKI, INC., | ) |
|           Defendant | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, SUMMARY JDUGMENT**

**INTRODUCTION**

Plaintiff, Richard Salois ("Mr. Salois" or "Plaintiff"), hereby submits this memorandum

of law in opposition to Defendant's Motion To Dismiss or in the Alternative Summary

Judgment.

**ARGUMENT**

**A.  The Existence of an Arbitration Clause in the Collective Bargaining Agreement Does
Not Bar Plaintiff's Claims.**

Defendant, relying on 14 Penn Plaza, LLC v. Pyett, argues that Plaintiff's claims should

be dismissed because the collective-bargaining agreement ("CBA") mandates the arbitration of

Plaintiff's claims.  14 Penn Plaza, LLC v. Pyett, 129 S. Ct. 1456 (2009).[1]  To the contrary, Penn

Plaza is inapplicable to this case because the CBA does not clearly and unmistakably require

---

[1] The Massachusetts Supreme Judicial Court ("SJC") recently held that discrimination claim arising under Massachusetts General Laws, chapter 151B can be arbitrated.  *See* *Warfield v. Beth Israel Deaconess Medical Center*, 2009 Mass. LEXIS 420 , *11 (July 27, 2009).  The SJC found that the arbitration clause at issue in that case was not enforceable because it did not "explicitly state" that chapter 151B claims were included; however, the SJC suggested that something beyond an explicit statement of intention may be necessary to hold such a clause enforceable.

Plaintiff to arbitrate his statutory claims.   Further, the Complaint should not be dismissed because according to the plain language contained in the CBA, Plaintiff did not even have the option of submitting his statutory claims to arbitration.

It is well established that general arbitration provisions in a CBA do not preclude a civil remedy or civil complaint for a violation of Title VII or the FMLA.  See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 39 (1974).   In 2009, the Supreme Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate [Title VII] claims is enforceable as a matter of federal law."  *14 Penn Plaza, LLC v. Pyett*, 129 S. Ct. 1456 (2009).  The Court in Penn Plaza expressly declined to overrule Gardner-Denver and its progeny, but clarified that Gardner-Denver should never have been construed as barring unions from waiving "an employee's right to a judicial forum under the federal anti-discrimination statutes."  *Id*. at 1466.  The Court in Penn Plaza explained that the Gardner-Denver line of cases found that arbitration was without preclusive effect as to subsequent judicial resolution of statutory claims in the labor context where the collective-bargaining agreements at issue did not authorize the arbitrator to resolve statutory claims and the employees did not consent to such arbitration.  See *id.* at 1468.  Following Penn Plaza, where a collective-bargaining agreement expressly requires statutory claims to be decided by arbitration, those claim are not appropriate for resolution in a judicial forum.  See *id*. at 1468-1469; *Jones v. Verizon Communs., Inc.*, 2009 U.S. Dist. LEXIS 98735, fn. 2 *5-6  (D. Mass. Oct. 23, 2009) ("What distinguishes the two cases is the language of the collective-bargaining agreements at issue.  The agreement in Penn Plaza explicitly committed employment-related discrimination claims to arbitration while the agreement in Gardner-Denver provided only for the arbitration of contractual (as opposed to statutory) claims.").

Unlike the CBA at issue in this case, the CBA at issue in Penn Plaza specifically "require[d] union members to submit all claims of employment discrimination to binding arbitration under the CBA's grievance and dispute resolution procedures." *Shipkevich v. Staten Island University Hospi*tal, 2009 U.S. Dist. LEXIS 51011 (E.D.N.Y. June 16, 2009) ("The CBA in 14 Penn Plaza [specifically] listed several anti-discrimination statutes, including the ADEA and Title VII[.]").[2] Penn Plaza has no impact in this case because the CBA does not require arbitration of statutory (Title VII) claims and does not even appear to allow individual employees, as opposed to the Union, the right to pursue any matters at arbitration.

The CBA in this case, like the CBA in Gardner-Denver, only includes a general non-discrimination provision that does not specifically refer to any specific statutory claims.  See CBA, Article Thirty-Three, page 28; *Gardner-Denver*, 415 U.S. at 39 n.2 (containing a non-discrimination provision stating that "The Company and the Union agree that there shall be do discrimination against any employee on account of race, color, religion, sex, national origin, or ancestry.").  The Complaint, Grievance, and Arbitration Procedure (Article Thirty-One) in the CBA, like the CBA in Gardner-Denver, defines a grievance as "a difference of opinion or dispute between the Company and the Union or between the Company and any of its employees *involving the interpretation and/or application of any terms of this Agreement*." (*emphasis added*).  See CBA, Article Thirty-One, page 26; *Gardner-Denver*, 415 U.S. at 39 n.3 (containing an arbitration procedure stating that "Should differences arise between the Company and the Union as to the meaning and application of the provisions of this Agreement, or should any trouble arise in the plant . . . an earnest effort shall be made by both the Company and the Union

---

[2] Although Penn Plaza was an ADEA case, the Court's reasoning applies equally well to Title VII claims.  See *14 Penn Plaza LLC*, 129 S. Ct. at 1478 (Stevens, J., dissenting) ("[N]either petitioners nor the Court points to any relevant distinction between the two statutes.").

to settle such differences promptly.").[3]  According to the CBA, "if a grievance is not resolved . . . , the *Union* will have (30) days . . . to appeal the question to arbitration.  (emphasis added).  <u>See</u> CBA, Article Thirty-One, page 27; *Gardner-Denver*, 415 U.S. at 39 n.3 (stating that disputes not settled by the grievance procedure "may be referred to arbitration.").  Accordingly, there is no requirement in the CBA to arbitrate statutory claims.

First, nowhere in the CBA is there any statement that statutory claims are subject to the Complaint, Grievance, and Arbitration Procedure (Article Thirty-One).  <u>See generally</u>, CBA.

Second, Plaintiff's claims are not even subject to the Complaint, Grievance, and Arbitration Procedure (Article Thirty-One) because by the terms of the CBA, grievances are limited to complaints involving the interpretation and/or application of any terms of the CBA itself: that is, grievance and subsequent arbitration is clearly authorized only in connection with contract-based claims only.   <u>See</u> CBA, Article Thirty-One, page 26.   Where a collective-bargaining agreement authorizes arbitration of contract-based claims only, the resolution of statutory claims in a judicial forum is appropriate under <u>Gardner-Denver</u> and its progeny.  <u>See</u> *14 Penn Plaza*, 129 S. Ct. at 1468-1469; *Jones v. Verizon Communs., Inc.*, 2009 U.S. Dist. LEXIS 98735, fn. 2 *5-6  (D. Mass. Oct. 23, 2009) (denying motion for partial judgment and holding that <u>Gardner-Denver</u> remains good law).

Third, the CBA makes no mention of an individual's right to pursue the matter at arbitration and, in fact, indicates that only the Union can proceed to arbitration.  <u>See</u> <u>generally</u>, CBA, Article Thirty-One, pages 26-27.   According to the plain language of the CBA, an individual employee who files a grievance cannot pursue that matter at arbitration only the Union can.  <u>See</u> <u>generally</u>, CBA, Article Thirty-One, page 27.  The CBA states, in pertinent part:

---

[3] A Complaint does not become a grievance until it is reduce to writing and presented to the Company by the Union in accordance with the CBA.  <u>See</u> CBA, Article Thirty-One, page 26.

Arbitration – If the grievance is not resolved at Step 3 or Mediation, *the Union* will have (30) days from the date the Company's 3rd step answer was given or due, or if selected, from the date of the Mediation, to appeal the question to arbitration.  During said thirty (30) day period, *the Union* must advise the Company in writing of its intent to request arbitration.  If *the Union* does not appeal within the specified time limit, the grievance will be considered as being satisfactorily settled on the basis of the Company's last position.  (*emphasis added*).

See CBA, Article Thirty-One, page 27.  The plain language of the Arbitration provision leaves the possibility that an individual who filed a grievance relating to discrimination or the FMLA would have no judicial or arbitration forum to have discrimination or FMLA claims resolved unless the Union, a third party, decided to pursue the matter in arbitration.  This is not a result the law can allow.  Based upon the foregoing, Plaintiff is entitled to have his statutory claims pursued in a judicial forum.

**B. Plaintiff's Discrimination Claims are Not Preempted by Section 301 of the Federal Labor Management Relations Act.**

Section 301 of the Federal Labor Management Relations Act ("LMRA") preempts state laws regulating labor when "evaluation of the [state] claim is inextricably intertwined with consideration of the terms of the labor contract."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).  Despite the preemptive scope of section 301, state law claims survive if they do not require interpretation of the CBA.  See *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 409 n.8 (1988) ("[section] 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement").  "The degree to which a state law claim depends upon an understanding of the CBA requires careful judicial analysis."  *Fant v. New Eng. Power Serv. Co.*, 239 F.3d 8, 18-19 (1st Cir. 2001).  "Courts confronted with state law claims must . . . locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that

agreement, which does preempt the state law claims." *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 10 (1st Cir. 1999).  A "real interpretive dispute" regarding the CBA must exist for other claims to be preempted.  *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 42 (1st Cir. 1997).

Defendant, relying on section 301 of LMRA, argues that the retaliation claim against it should be dismissed because the supremacy of federal law in the realm of labor relations precludes the application of anti-discrimination law to Plaintiff's claims.   According to Defendant, resolution of Plaintiff's discrimination claim involves questions about how Plaintiff was trained, whether he was disciplined for 'excused" absences, and whether he was treated in a discriminatory manner and that the answers to those questions necessarily depends on an interpretation of the CBA.   More specifically, Defendant claims that whether an absence is excused depends on the interpretation of the CBA and its Time and Attendance policy.[4]

This Court has already addressed this issue and rejected Defendant's argument.   In a discrimination case brought in this Court by different plaintiffs against the same Defendant who argued the exact same point with regard to LMRA preemption of discrimination claims, Judge Ponsor stated the following: "Tsubaki's reasoning, however, is only applicable to suits premised on the violation of contracts between employers and the unions representing their employees." *Navarro v. U.S. Tsubaki, Inc.*, 577 F. Supp. 2d 487, 500 (D. Mass. Sept. 17, 2008) (holding that preemption under section 301 is inapplicable to plaintiffs' discrimination claims).   "As *Lingle* makes clear, statutorily prohibited discrimination cannot be rendered permissible under any proper interpretation of a CBA." *Id.*   "Since no interpretation of a CBA could validate Tsubaki's conduct toward [Plaintiff] if that conduct was motivated by discriminatory animus prohibited

---

[4] The Time and Attendance policy does not appear to be attached to Defendant's brief.  Further, after a review of the CBA, Plaintiffs could not locate the Time and Attendance policy allegedly contained in the CBA, nor could they locate any language about "excused" absences.  Thus, Plaintiff believes that a consultation of the CBA is not even necessary to determine what constitutes an "excused" absence.

pursuant to Chapter 151B, it follows that the interpretation of any relevant CBA terms will not be determinative in this case." *Id*. "The essence of Plaintiff[']s claim is that Tsubaki deprived [him] of statutory rights guaranteed by Massachusetts law." *Id*. While reference to the [training and discipline] provisions of the CBA, if they even exist, may be relevant to the analysis of Plaintiff's claim, resolution of the claim does not "depend" on any interpretation of the CBA. See *Id*; *Butler v. Verizon New England, Inc.*, 68 Mass. App. Ct. 317 (Feb. 26. 2007) (holding that handicap discrimination claim is not inextricably intertwined with CBA); *Rogers v. NSTAR Electric*, 389 F. Supp. 2d 100 (D. Mass. Sept. 22, 2005) ("cases involving disputes brought under state anti-discrimination laws do not, by definition, rely on collective bargaining agreements and are therefore not preempted by section 301."); *Ralph v. Lucent Techs., Inc.*, 135 F.3d 166, 171 (1st Cir. 1998).

The rights guaranteed to Plaintiff by chapter 151B exist independent of the CBA; as such, the principles mandating preemption under section 301 are inapplicable to this case. See *Id*. For the same reasons outlined by Judge Ponsor in Navarro, Plaintiff's discrimination claims in this case are not preempted by the LMRA.

Contrary to Defendant's assertion, Plaintiff's discrimination claim does not arise from any contractual right established by the CBA, involve a dispute over the meaning of any term or provision in the CBA, or depend upon the interpretation of the CBA. The discrimination claim merely alleges that the Defendant retaliated against Plaintiff because he engaged in protected activities. This case is about whatever Defendant may state their actions were based on and whether those actions were in retaliation for Plaintiff engaging in protected activities. The ultimate resolution of the discrimination claim and the issues associated with that claim will not

cause the Court to become inextricably intertwined in the CBA.  Thus, Plaintiff's retaliation claim should not be dismissed.

## C.  **The Undisclosed Discrete Acts.**

As noted by Defendant, the statute of limitation for claims under Massachusetts General Laws, chapter 151B is three years.  The statute of limitations for claims under the FMLA is two years or three years depending on whether or not Plaintiff can prove that the violation of the FMLA was willful.  Thus, under chapter 151B a three years statute of limitations applies and under the FMLA a three year statute of limitations may apply.[5]  Any discrete acts of discrimination or violations of the FMLA that occurred more than three years prior to the date the Complaint was filed are undisputedly time barred.  Defendant fails to indicate what acts in Plaintiff's Complaint it considers "discrete" acts or the "discrete" acts that it believes are time barred.  Therefore, Plaintiff is unable to adequately oppose Defendant's argument and the Motion should be denied.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss or in the Alternative Summary Judgment.

Dated: December 11, 2009                     Respectfully submitted,


**/s/ Jeffrey S. Morneau**
Jeffrey S. Morneau (BBO# 643668)
DONOHUE, HYLAND & DONOHUE, P.C.
1707 Northampton Street
Holyoke, MA 01040
jmorneau@donohuehyland.com
(413) 536-1977

---

[5] Plaintiff will need to conduct discovery on the issue of a willful violation of the FMLA.

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as non-registered participants on the date of its filing.

**/s/ Jeffrey S. Morneau**
Jeffrey S. Morneau